## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS  DIVISION

**JEREMY TODD BROWN,**

      **Petitioner-Defendant,**

                                     **Civil Action No. 2:12-cv-70**

**v.**                                **Criminal Action No. 2:09-cr-14**
                                          **(JUDGE BAILEY)**

**UNITED STATES OF AMERICA,**

      **Respondent-Plaintiff.**

### REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

## I.   INTRODUCTION

On October 1, 2012, Petitioner-Defendant Jeremy Todd Brown ("Petitioner"), proceeding *pro se*, filed a "Motion to Vacate Pursuant to 28 U.S.C. § 2255. (Civil Action No. 2:12-cv-70, Doc. 1; Criminal Action No. 2:09-cr-14-1, Doc. 202 ("Mot.").) On October 1, 2012, the Clerk of Court sent Petitioner a Notice of Deficient Pleading, instructing him to file his Motion on the court-approved form within twenty-one days from the date of the Notice. [Doc. 205].  On October 16, 2012, Petitioner filed a Motion for Leave to File a corrected Motion to Vacate.  *Id.*; [Doc. 211].  The undersigned granted that Motion on October 17, 2012.  *Id.*; [Doc. 215]. In addition, the Petitioner filed a Motion for Admission Pro Hac Vice, which was granted by District Judge Bailey on October 17, 2012.  *Id.*; [Doc. 210, 216].   Petitioner filed his court-approved form ("Court-Approved Motion"); [Doc. 217] on October 22, 2012.

On October 25, 2012, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government") to answer

Petitioner's motion. [Doc. 219]. The Government responded to Petitioner's Motion on November 16, 2012 ("Response"). [Doc. 221] ("Resp."). Petitioner replied to the Government's Response on December 12, 2012 ("Reply"). [Doc. 226] ("Reply").[1]

One of Petitioner's claims is that his attorney incorrectly advised him that the maximum possible sentence he could receive was twenty-five (25) years incarceration. Petitioner actually received a sentence of thirty(30) years incarceration followed by five years of supervised release. The Court issued an Order on March 20, 2013 setting an evidentiary hearing on this sole issue. [Doc. 231]. On May 15, 2013, an evidentiary hearing was held on that issue.

The undersigned now issues this Report and Recommendation on Petitioner's motion after holding an evidentiary hearing on the issue as to whether Petitioner's trial attorney had advised him the maximum sentence he could receive would be twenty-five years and without holding an evidentiary hearing on any of the remaining issues. For the reasons stated below, the undersigned recommends that the District Judge deny Petitioner's motion to vacate.

## II. FACTS

### A. *Conviction and Sentence*

On June 16, 2009, the Grand Jury indicted Petitioner on four counts of a twenty-six count Indictment involving two defendants. [Doc. 4] Count One charged Petitioner and co-defendant Bruce Alan Davidson, Jr. with conspiracy to manufacture methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846. *Id.*

---

[1]Supplemental filings are discussed in Footnotes 2 and 3.

at 1.  Count Two charged Petitioner and co-defendant with possession of material used in the manufacture of methamphetamine, in violation of Title 21, United States Code, Sections 843(a)(6) and 843(d)(2) and Title 18, United States Code, Section 2.  *Id.* at 2.  Count Three charged Petitioner and co-defendant with Possession of Pseudoephedrine to be used in Manufacture of Methamphetamine in violation of Title 21, United States Code, Section 841(c)(2) and Title 18, United States Code Section 2.  *Id.* at 3.   Count Four charged Petitioner and co-defendant with possession of Material used in the Manufacture of Methamphetamine, in violation of Title 21, United States code, Sections 843(a)(6) and 843(d)(2).  On July 21, 2009, Petitioner was arraigned on those charges and released on an Order Setting Conditions of Release. [Doc. 36].  On August 4, 2009, Petitioner filed a Motion to Suppress Evidence, which he later withdrew on August 13, 2009, because he was not a resident of the home that was searched at the time of the search and therefore, he lacked standing to file that Motion. [Doc. 41, 48].  On August 12, 2009,  the Grand Jury returned a superseding indictment against the Petitioner charging him with four counts of a thirty count indictment involving two defendants. [Doc. 45].   In the superseding indictment, Petitioner was the sole Defendant named in  Counts 2, 3, and 4, while in the original indictment his co-defendant had been named in those counts also.   *Id.* at 1-4.

On September 23, 2009, after a two-day trial, Petitioner was convicted of Counts One, Two and Three and found not guilty as to Count Four. [Doc. 114].  At that time, the Government made an oral motion to revoke Petitioner's bond, which was granted.[Doc. 118]  Petitioner was represented by Federal Public Defender Brian Kornbrath during trial proceedings.

On March 8, 2010, Petitioner appeared before Judge Bailey for sentencing. Judge Bailey sentenced Petitioner to a term of 360 months imprisonment concurrent with counts 2 and 3, followed by a five-year term of supervised release on Count 1; to a term of 120 months concurrent with counts 1 and 3, followed by three years of supervised release; and to a term of 240 months concurrent with counts 1 and 2, followed by a three year term of supervised release. [Doc. 136]

## B. Direct Appeal

Petitioner pursued a direct appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). On appeal, Petitioner asserted that (1) a defense witness was called to testify out of order, before the Government finished presenting its case; (2) the district court clearly erred in finding that an obstruction of justice adjustment applied; and (3) the $100 special assessment on each count of conviction was an excessive fine that violated the Eighth Amendment and Origination Clause of the Constitution. *United States v. Brown*, 423 Fed. Appx. 264, 2011 WL 1396604 at *1 (4th Cir. 2011). The Fourth Circuit affirmed Petitioner's conviction and held that the court did not commit plain error during the criminal trial in permitting a defense witness to be called to testify out of order; that the court did not commit clear error in determining that the Petitioner obstructed justice; and that the court did not plainly err in imposing the special assessment. *Brown* at *4. Petitioner filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on October 3, 2011. *Brown v. United States*, 132 S.Ct. 339, 181 L.Ed.2d 212, 80USLW3190 (October 3, 2011).

## C. Federal Habeas Corpus

### 1.    Petitioner's Motion

In his Court-Approved Motion, Petitioner alleges the following:

1.    Defense Counsel was constitutionally ineffective for not filing a motion to suppress evidence.

2.    Defense Counsel was constitutionally ineffective for the following during trial:

   (a)    not objecting to the verdict form because it did not contain language that drug weights must be within the foreseeable  scope of the petitioner's conspiratorial agreement.
   (b)    not objecting to a jury instruction that, in isolation, did not instruct that an element of an offense may not be based entirely on inferences unless "such inferences were proven from facts established beyond reasonable doubt."
   (c)    not requesting a jury instruction that the jury must find one (distribution), the other (manufacture) or both of the alternative objects of count one's conspiracy.

3.    Defense counsel was constitutionally ineffective for the following:

   (a)    not objecting to the court's application of Guideline 2D1.1(b)'s three level enhancement for creating a substantial risk of harm to human life.

   (b)    not objecting to the jury verdict form permitting the jury to find more than 50 grams of methamphetamine "on the ground that most of the methamphetamine manufactures was consumed by the petitioner."

.    4.    Defense counsel was constitutionally ineffective by not raising the "rule against nationwide disparity under 3553(a)(6)."

5.    His defense counsel told him that his maximum possible sentence was twenty-five years.

[Doc 217 at 9-15].

### 2.    Government's Response[2]

_____

[2]The Government also filed a Supplemental Answer to Petitioner's Motion to Vacate. [Doc. 227].  Therein, the Government asks that Petitioner's motion be dismissed without an evidentiary  hearing as to his allegation that trial counsel was ineffective for failure to apprise him of the maximum possible sentence that could be imposed if he proceeded to trial. [Doc. 227

In its Response, the Government asserts as follows:

1.      With regard to Ground One, Defense Counsel filed the motion to suppress but later withdrew it after Mr. Brown told his trial counsel he lacked standing because he did not reside or own the trailer that was searched.

2.      With regard to Petitioner's Ground Two, the Government asserts as follows:

    (a)     Although the verdict form did not contain language that drug weights must be within the forseeable scope of the petitioner's conspiratorial agreement, the court gave a jury instruction so advising the jury.

    (b)     Although there was one jury instruction that, in isolation, did not instruct that an element of an offense may not be based entirely on inferences unless "such inferences were proven from facts established beyond reasonable doubt", the judge correctly instructed the jury on the use of inferences and proof beyond a reasonable doubt.

    (c)     The jury verdict form that was used required the jury to find both distribution **AND** manufacture, which was a higher standard than the law actually required so the verdict form was drafted in Petitioner's favor.

3.      With regard to Petitioner's Ground Three, the Government asserts as follows:

    (a)     The presentence report recites strong factual analysis in favor of the risk enhancement.

    (b)     There is no legal basis to object to the jury verdict form permitting the jury to find more than 50 grams of methamphetamine "on the ground that most of the methamphetamine manufactures was consumed by the petitioner,"

.   4.      With regard to Petitioners Ground Four the Government states that the petitioner's sentence was at the lowest end of the applicable guideline range for a person with a criminal history category V, who did not accept responsibility and who obstructed justice.

5.      With regard to Petitioner's Ground Five, the Government does not believe

---

at 1].  In support of their request, though they noted that Mr. Kornbrath declined to submit an affidavit, the Government attached an email from Brian J. Kornbrath, Petitioner's trial counsel, to Stephen Warner, Assistant U.S. Attorney. [Doc. 227-1].  In this email, Mr. Kornbrath stated that, while he did not guarantee a specific sentence, he indicated that Mr. Brown would likely receive 234-294 months (20-25 years) incarceration if convicted by a jury. *Id.*

that Petitioner's allegation that his defense counsel told him that the maximum possible sentence was twenty-five years because the Government does not believe there is any offense in the Drug Control Act with that maximum penalty. Additionally, the Court transcripts show that Petitioner was clearly informed in Court on several occasions that his maximum penalty for his alleged crimes were a maximum of forty years.

[Doc. 221].

### 3. Petitioner's Reply[3]

In his Reply to Government's Response, Petitioner reasserts and expands upon the arguments made in his Motion to Vacate and requests an evidentiary hearing as to each. [Doc. 226]. Petitioner additionally attached as an appendix containing 2009 data as to the mean and median sentences imposed on defendants in drug possession and manufacturing cases in support of his contention that counsel was constitutionally ineffective for failure to raise the rule against nationwide disparity. [Doc. 226 at 28-43].

### D. Evidentiary Hearing

On May 15, 2013, an evidentiary hearing was held. Petitioner appeared in person and by retained pro hac vice counsel Cheryl J. Sturm and by local counsel, Michael E. Froble, Esq, who participated by phone. The United States appeared by Assistant United States Attorney Stephen D. Warner. The Court heard the duly sworn testimony of

---

[3]Petitioner also submitted a reply to the Government's Supplemental Answer, in which Petitioner requests an evidentiary hearing to allow the court to make credibility determinations as to conflicting testimony as to whether trial counsel stated during the plea bargaining phase that Petitioner would not receive more than 25 years incarceration. Petitioner also asserted that an evidentiary hearing was necessary for Mr. Kornbrath to testify as to whether trial counsel had a strategic reason for failing to file a motion to suppress the evidence recovered from the trailer, and for failing to make the objections noted in grounds two through four of Petitioner's Motion to Vacate. [Doc. 228 at 1-3]

Petitioner's former defense counsel, Brian J. Kornbrath, Federal Public Defender, and the Petitioner. Additionally, the Court received copies of emails sent from Mr. Kornbrath to Mr .Warner discussing the terms of the September 11, 2009 plea offer, a copy of the written plea offer itself, and surrounding discussions, as well as the transcript of Petitioner's initial hearing, in which Magistrate Judge Kaull apprised him of the charges against him, and their statutory sentence ranges. [Doc. 244].

At the hearing, the Petitioner called Mr. Kornbrath as an adverse witness, who testified that he did not give the Defendant a guaranteed maximum sentence if he went to trial. Instead, Mr. Kornbrath testified that he gave the petitioner an "anticipated range" of 235 to 293 months (19.5 to 24.5 years) if convicted by a jury. That "anticipated range" was based on the stipulated drug amount in the plea agreement. Mr. Kornbrath could not have anticipated that his client would obstruct justice during the course of the trial, resulting in a 2 level increase in sentencing guidelines, or that higher drug quantities would be found by the jury, raising the sentencing guidelines an additional two levels.

Petitioner testified that Federal Public Defender Kornbrath had never shown him the Government's written plea agreement. In addition Petitioner testified that it was his understanding based on his conversations with Mr. Kornbrath that if he plead he would get a maximum of twenty years and if he went to trial he would get a maximum of twenty five years. However, Petitioner conceded that Mr. Kornbrath did not make a guarantee to that effect and that Mr. Kornbrath had advised him to take the plea.

The Government presented evidence as to the terms of, and discussions surrounding, the September 11, 2009 plea agreement. The Government also introduced evidence that Petitioner was told by Magistrate Judge Kaull during his initial appearance

that he could get a sentence of up to life incarceration.

At the conclusion of the hearing, this Court took the matter under advisement.

## D. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 2:12-cv-70, ECF No. 1; Criminal Action No. 2:09-cr-14-1, ECF No. 217) be denied and dismissed because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel. Based upon a review of the record and the evidence presented at the hearing on May 15, 2013, the undersigned further recommends that Petitioner's Motion also be denied as the ineffective counsel claim alleging Petitioner's trial counsel told him the incorrect maximum penalty. The evidence presented at the hearing showed that (1) defense counsel did not tell Petitioner a definite maximum penalty, only an "anticipated range," which was based on accurate information to the best of counsel's knowledge, (2) defense counsel could not have anticipated that Petitioner would increase his sentencing level through mid-trial obstruction of justice, and (3) Petitioner was several times apprised that his charges carried a maximum sentence of lifetime incarceration.

## III. ANALYSIS

## A. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant

must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland,* at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to

testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

**B.    *Analysis of Petitioner's Ineffective Assistance of Counsel Claims***

### 1.    Petitioner's Claim That Counsel Was Constitutionally Ineffective for Not Filing a Motion to Suppress Evidence Is Without Merit

To challenge his conviction, Petitioner alleges that trial counsel was ineffective because he did not file a motion to suppress evidence seized from the Abbot Road premises in Upshur County, West Virginia pursuant to a search warrant. Trial counsel did in fact file a Motion to Suppress [Doc.. 41] on August 4, 2009. However, on August 13, 2009, Trial Counsel withdrew that motion Doc. 48] because Defendant was not a resident of the property searched and therefore lacked standing to contest the search and seizure that occurred at that property on November 22, 2007.

Petitioner's claim that counsel was ineffective for failure to file a motion to suppress is without merit. A decision regarding whether to file a motion to suppress is a tactical decision, for which greater deference is given to trial counsel's skill and experience. *See Sexton v. French*, 163 F.3d 874, 885 (1998); *see also Teague* at 1531**.** "Trial counsel is not per se ineffective merely because he failed to file a particular motion allowed under the

rules of criminal procedure." *United States v. Tart*, No. 87-7331, 877 F.2d 61, 1989 WL 64120, at *2 (4th Cir. June 9, 1989). "Failure to raise a losing argument or pursue a futile motion to suppress does not constitute ineffective assistance." *Floyd v. United States*, Nos. 7:04-1125-HFF, 7:06-1084-HFF, 2008 WL 3925841 (D.S.C. Aug. 26, 2008). Even if, *arguendo*, this decision constituted a professionally unreasonable error, it would not "warrant setting aside a criminal proceeding if the error had no effect on the judgment." *United States v. Morrison*, 449 U.S. 361, 364-365 (1981). Petitioner must also show that had the aforementioned motion to suppress not been withdrawn, there is a "reasonable probability that...the result of the proceeding would have been different." *Strickland* at 694.

When a Petitioner claims ineffective assistance of counsel based on failure to pursue a Fourth Amendment claim, he "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence" in order to satisfy the actual prejudice prong of the *Strickland* test. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In the claim at issue, trial counsel withdrew the aforementioned motion to suppress when he became aware that Petitioner lacked standing to assert a Fourth Amendment claim, as he was not a resident of the searched property at Abbott Road in Upshur County, West Virginia. [Doc. 48]. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured *by a search of a third person's premises or property* has not had any of his Fourth Amendment rights infringed." *Alderman v. United States*, 394 U.S. 165, 174 (1969) (emphasis supplied); *see also Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Therefore, lacking a meritorious Fourth Amendment claim, Petitioner has

failed to show that the outcome of the trial would have been different had trial counsel not withdrawn the motion to suppress, and has thus failed to show any actual prejudice. *See Kimmelman* at 375.

For the foregoing reasons, the undersigned finds that Petitioner has failed to meet his burden of demonstrating that his counsel was ineffective for not filing a motion to suppress the methamphetamine lab equipment recovered from the trailer on Abbott Road. Therefore, the undersigned recommends that this claim be dismissed.

**2. Petitioner's Claims Regarding Counsel's Failure to Object to the Verdict Form and Failure to Object to a Jury Instruction and Failure to Request a Jury Instruction Are Without Merit**

In his Motion to Vacate, Petitioner claims first that trial counsel was constitutionally ineffective for failing to object to the language of the Verdict Form ("Verd."). The Petitioner believes that the verdict form language was objectionable because, standing alone, it did not instruct the jury that (a) a finding of 50 grams or more of controlled substances must be based on those substances within the scope of Petitioner's conspiratorial agreement and reasonable; (b) that an element of an offense may not be based entirely on inferences unless "such inferences were proven from facts established beyond a reasonable doubt." The Petitioner additionally claims (c) that his trial counsel was ineffective for failing to request an instruction that the conspiracy in count one may be established either by a finding of both conspiracy to manufacture and to distribute methamphetamine, or of one or the other. The language on the Verdict Form is "distribute, *and* to manufacture," omitting the alternative language which Petitioner claims was necessary. (Doc. 114) (emphasis supplied). The Court will address these claims together, as all three involve a failure to

object to jury instructions.

"There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington* at 790. Specifically, the Fourth Circuit has recognized a presumption that trial counsel's decision not to object to nor to request addition to the jury instructions "under the circumstances...might be considered sound trial strategy." *Leonard-Bey v. Conroy*, 39 F. App'x. 805, 808 (4th Cir. 2001); *see also Strickland* at 689; *Humphries v. Ozmint*, 397 F.3d 206, 234 (4th Cir. 2005) (stating that counsel's "failure to object to...objectionable material for tactical reasons can constitute objectively reasonable trial strategy under *Strickland.*").

### 2(a), (b). Counsel's Failure to Object to the Verdict Form Omissions which were Contained in Oral Jury Instructions

Petitioner additionally must demonstrate that "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A court does not "conduct a search for technical error" in jury instructions. *United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990). Rather, the primary question for this Court is whether, taken as a whole, they fairly state the controlling law. *Id.*; *see also Chavis v. Finnlines, Ltd., O/Y*, 576 F.2d 1072, 1076 (4th Cir. 1974). After being so instructed, a jury is presumed to be capable of following the given instructions, *See United States v. Jones*, 907 F.2d 456, 460 (4th Cir. 1990), and on review, presumed to have in fact rendered a verdict consistent with the given instructions. *See United States v. Alerre*, 430 F.3d 681, 692 (4th Cir. 2005).

As to Petitioner's first two claims regarding the verdict form, the omissions which he

claims trial counsel should have objected to were included in the judge's oral instructions to the jury. Petitioner has put forth no facts to overcome the presumption that the jury was capable of following the oral instruction, and therefore has not shown that the trial outcome would have been different had trial counsel objected to the instructions.

**2(c). The Verdict Form's Erroneous Requirement of Finding Both Distribution "and" Manufacturing, Rather than "or".**

Petitioner's third claim regarding the verdict form, that trial counsel was ineffective for failure to object to the use of language appearing to require a finding of both intent to join a conspiracy to manufacture and distribute, rather than either or both, also fails to satisfy either prong of *Strickland*. To satisfy the prejudice requirement of *Strickland*, an error must have "had substantial and *injurious* effect or influence in determining the verdict." *Correll v. Thompson*, 63 F.3d 1279, 1291 (4th Cir. 1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619 (1993)) (emphasis supplied). This alleged insufficiency could not be said to be injurious, as counsel's failure to object to the verdict form language placed an extra burden on the prosecution; that of proving both objects, rather than one. The fact that the jury found both at trial establishes that they certainly would have found either, making the outcome no different had counsel successfully objected.

Therefore, because Petitioner cannot demonstrate how counsel's failure to raise the alleged insufficiencies prejudiced his defense, the undersigned recommends that this claim be dismissed.

**3.** **Petitioner's Claim Regarding Counsel's Failure to Object to the Application of Guideline 2D1.1(B) Enhancement at Sentencing and Failure to Object to the Jury Verdict Form Regarding the Amount of Drugs Is Without Merit**

In his motion to vacate, Petitioner claims that trial counsel was constitutionally ineffective for failure to object to the application of Sentencing Guideline 2D1.1(B). [Doc 217 at 12]. Additionally, Petitioner also claims that trial counsel was constitutionally ineffective for failing to object to the jury verdict form which permitted the jury to find more than 50 grams of methamphetamine. [Doc. 226 at 17]. Because these two issues both concern the length of sentence to be applied to Petitioner, the Court will consider them together.

### 3(a). 2D1.1(B) Sentence Enhancement for Substantial Harm to Human Life or the Environment

In his motion to vacate, Petitioner claims that trial counsel was constitutionally ineffective for failure to object to the application of Sentencing Guideline 2D1.1(B). [Doc 217 at 12]. Petitioner asserts that the three level enhancement should not have been applied because there was "nothing unusual about this case," and that the Petitioner's lab was "typical" of those in the area. *Id.* Petitioner's claim is without merit, as "[t]rial counsel is not per se ineffective merely because he failed to file a particular motion allowed under the rules of criminal procedure." *Tart* at *2. "Failure to raise a losing argument... does not constitute ineffective assistance." *Floyd v. United States*, Nos. 7:04-1125-HFF, 7:06-1084-HFF, 2008 WL 3925841 (D.S.C. Aug. 26, 2008).

Guideline 2D1.1(B) imposes a sentence enhancement for creating a substantial risk of harm to human life or the environment. "If... (ii) the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subsection (D); or (II) the environment, increase by 3 levels." *U.S.S.G. 2D1.1(b)(13)(C)(ii).* Under the U.S. Sentencing Guidelines, the

question of whether an offense has created a substantial risk of harm to human life or the

environment depends on four factors. *See United States v. Houchins*, 364 F.3d 182, 187-

188 (4th Cir. 2004).

> Factors to Consider.--In determining, for purposes of subsection (b)(13)(C)(ii) or
> (D), whether the offense created a substantial risk of harm to human life or the
> environment, the court shall include consideration of the following factors:
>
> (I) The quantity of any chemicals or hazardous or toxic substances found at the
> laboratory, and the manner in which the chemicals or substances were stored.
>
> (II) The manner in which hazardous or toxic substances were disposed, and the
> likelihood of release into the environment of hazardous or toxic substances.
>
> (III) The duration of the offense, and the extent of the manufacturing operation.
>
> (IV) The location of the laboratory (e.g., whether the laboratory is located in a
> residential neighborhood or a remote area) and the number of human lives
> placed at substantial risk of harm.

*U.S.S.G. § 2D1.1, Application Note 18(B)(I).*[4]

The Presentence Investigation Report ("PSI") as to Petitioner's case filed

January 12, 2010 discussed the Note 18(B)(1) factors as pertaining to Petitioner's

methamphetamine lab. [PSI at ¶ 62-68].  Because the PSI remains under seal, the

information contained in these paragraphs will not appear in this Report and

Recommendation.  However, such information contained in the PSI raises a convincing

case that Petitioner's methamphetamine lab caused the aforementioned substantial risk

of harm.  Petitioner claims that the enhancement should not have been applied because

Petitioner's lab was 'typical' and no more harmful than other meth labs in the area. [Doc.

217 at 12].  However, nothing in the case law or sentencing guidelines to indicate that

---

[4]Note 18 to U.S.S.G. § 2D1.1 is referenced as Note 20 in both the Presentence
Investigation Report and the filings of the parties.  The Sentencing Guidelines have been updated
since these filings, and these citations refer to the same language.

the 'typical' local methamphetamine lab in Upshur County, West Virginia is not substantially harmful to human life or the environment.

Therefore, Petitioner has failed to show that counsel either acted unprofessionally in failing to object to the application of U.S.S.G. § 2D1.1 to Petitioner's sentencing, or that his alleged unprofessional errors prejudiced Petitioner in the outcome of the proceeding, the undersigned recommends that this claim be dismissed.

### 3(b). Amount of Drugs Found by the Jury

In his motion to vacate, Petitioner also claims that trial counsel was constitutionally ineffective for failing to object to the jury verdict form which permitted the jury to find more than 50 grams of methamphetamine. He claims that this aspect of the jury verdict form was objectionable because most of the methamphetamine produced was intended for personal use, and not for distribution. [Doc. 226 at 17]. Petitioner was convicted of conspiracy to manufacture methamphetamine. Nowhere in the relevant statute is there an assertion that the crime of manufacturing is mitigated if the substance is being manufactured for personal use. 21 U.S.C. § 841(a).

Here, Petitioner has failed to set forth any law or facts supporting his claim. Therefore, the undersigned recommends that Petitioner's claim be dismissed because it has no merit.

### 4. Petitioner's Claim Regarding Counsel's Failure to Raise the "Rule Against Nation Wide Disparity under 3553(a)(6)" Is Without Merit

In his motion to vacate, Petitioner claims that counsel was constitutionally ineffective for failure to object to the length of the sentence based on the "rule against nationwide disparity." 18 U.S.C. § 3553(a)(6). [Doc. 217 at 14]. Petitioner alleges that,

had counsel argued that the 30 year sentence was nationally disparate, there was a reasonable probability that the outcome of the proceeding would have been different. *Id.* Petitioner's claim is without merit, as no reasonable trial counsel would object to a sentence which is the absolute minimum for the applicable guideline range. Additionally, Petitioner has proffered no facts or law to indicate that the sentence imposed was nationally disparate.

Counsel committed no unprofessional error by failing to object to the imposed sentence in what would have been a futile objection. Even if Petitioner were to establish that the sentence may have been objectionable, "counsel's "failure to object to...objectionable material for tactical reasons can constitute objectively reasonable trial strategy under *Strickland*." *Humphries* at 234. "Trial counsel is not per se ineffective merely because he failed to file a particular motion allowed under the rules of criminal procedure." *Tart* at *2.

In this instance, Petitioner's total offense level was 39 with a Criminal History Category of V, making the applicable sentencing guideline range 360 months to life [Doc. 244-3]. The actual imposed sentence was 360 months imprisonment. [Doc. 217 at 5]

Petitioner has failed to meet his burden of showing that, had counsel made the aforementioned objection, the result of the proceeding would have been different. 18 USC § 3553(a)(6) states that "[t]he court, in determining the particular sentence to be imposed, shall consider... the need to avoid unwarranted sentence disparities among defendants *with similar records who have been found guilty of similar conduct.*" 18 USC § 3553(a)(6)(emphasis supplied). This is a high hurdle for him, as the Fourth

Circuit looks on disparate sentence arguments with disfavor. *See United States v. Foutz*, 865 F.2d 617 (4th Cir. 1989).

Petitioner has offered no facts or opinions that would tend to indicate that his sentence was disparately harsh by a national standard. The data which Petitioner offers to prove his sentence was substantially harsher than the national mean and median for methamphetamine production [Doc. 226 at 28-43] is of no help to this Court, as it does not separate defendants by criminal history, quantity of methamphetamine, or other applicable enhancements. Effectively, 18 USC § 3553(a)(6) does not require this Court to concern itself with Petitioner's sentence as compared to other defendants convicted of producing methamphetamine nationally, but as compared to other defendants convicted of producing a similar quantity of methamphetamine, with a category V criminal history, who also obstructed justice, and caused substantial harm to human life or the environment. Petitioner has presented no facts that tend to show that his sentence was nationally disparate in this respect.

Therefore, Petitioner has failed to meet his burden of showing that sentencing counsel was ineffective by failing to object to the sentence imposed or that Petitioner was prejudiced in the outcome thereby, and the undersigned recommends that this claim be dismissed because Petitioner cannot demonstrate that his counsel was ineffective.

**5. Petitioner's Claim Regarding Counsel's Failure to Advise Him of His Potential Maximum Sentence Is Without Merit (Hearing held May 15, 2013)**

In his motion, Petitioner alleges that defense counsel provided constitutionally ineffective assistance through his failure to apprise Petitioner of the potential maximum sentence which could be imposed upon him. Specifically, petitioner alleges that Mr. Kornbrath told him that the maximum sentence which he would receive if convicted by a jury was 25 years. Petitioner additionally claims that had Mr. Kornbrath told him, "in his professional opinion" that it was possible for him to receive as much as 30 years in prison, he would have accepted the Government's offer of a plea to 20 years. At an evidentiary hearing held on May 15, 2013, Petitioner stated that he would have accepted the plea offer, because he was willing to gamble five (5) extra years upon conviction by a jury, but not ten (10).

**5(a). Trial Counsel's Advice to Petitioner Was Not Constitutionally Ineffective.**

The Supreme Court has expressly applied the *Strickland* test to the plea-bargaining process. *See Lafler v. Cooper*, 123 S. Ct. 1376, 1384 (2012). Defense counsel's performance may be found deficient where he has grossly misled his client as to the state of the law, and the consequences of accepting or not accepting a plea bargain. *See Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979). However, as Petitioner argued at the May 15 evidentiary hearing, "there is a difference between a bad prediction within an accurate description of the law and gross misinformation about the law itself." *See Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995); *compare*

*United States v. Lambey*, 974 F.2d 1389, 1394-1395 (4th Cir. 1992) (finding no ineffective assistance of counsel where trial counsel said he "felt" that his client would receive a sentence of 70-108 months if he accepted an offered guilty plea when he actually received 360 months) *with Strader* at 63 (finding counsel ineffective where trial counsel misstated the law, incorrectly telling his client that he would be eligible for parole if he accepted the offered guilty plea).  "If the lawyer simply underestimates the sentence, there may not be ineffective assistance."  *Ostrander* at 355.

There is a material difference between a professionally unreasonable misstatement of the law and an incorrect prediction based on good information.   The estimated sentence predicted by Mr. Kornbrath differed from the actual result only in time to be served because of several enhancements, one of which was obstruction of justice.  In rendering his prediction, Mr. Kornbrath did not misstate any law, sentencing guideline, or collateral consequence.  Mr. Kornbrath testified that he could understand how Petitioner may have thought that his prediction for going to trial would be 25 years. It is undisputed from both the testimony of the Petitioner and Mr. Kornbrath that at no time did Mr. Kornbrath guarantee a sentence of any specific length, he only gave what he believed to be the probable sentence ranges.  Trial counsel did not misadvise Petitioner as to *what* the consequences of proceeding to trial would be, his prediction was merely incorrect as to the actual sentence.  As the Fourth Circuit stated in *Ostrander*, "[w]e cannot expect criminal defense lawyers to be seers, but we must demand that they at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it."  *Ostrander* at 355.  The Court finds that Mr. Kornbrath did apprise his client of the applicable law and provided his client

with a reasonably accurate description of the sentence ranges.

Had Mr. Brown not obstructed justice, which Mr. Kornbrath could not have predicted, the estimate of 25 years would have been relatively spot on. The pre-trial estimate, based on the parties' stipulations, was a total offense level of 34 (base 32, with a 2 level increase for releasing toxins into the environment). [Doc. 244-3]. The sentencing guideline range for this level with Mr. Brown's criminal history would be 235-293 months (19.5-24.5 years). *Id.* After trial, the resulting total offense level was 39 (base 34, with 3 level increase for harm to human life and the environment, and 2 level increase for obstruction of justice). *Id.* This carried the imposed sentence range of 360 months (30 years) to life. *Id.* However, part of the disparity between the expected and actual sentence resulted from the Petitioner obstructing justice during the course of the trial by attempting to get witnesses to change their testimony in Petitioner's favor. Without this increase, which was clearly unforeseeable to Mr. Kornbrath, the total level would have come out to 37, with a sentence range of 324-405 months (27-33.75 years). Since Petitioner was sentenced to the minimum within the applicable guidelines, a sentence of 324 months would likely have been the result of a conviction without the obstruction of justice, which is only an 8% deviation from the 25 years which trial counsel allegedly predicted.

Therefore, Petitioner has failed to show that trial counsel rendered professionally deficient advice during the plea bargaining stage, and the performance prong of *Strickland* is unsatisfied.

> **5(b). Petitioner does not meet the prejudice prong of *Strickland* either. Petitioner testified that Mr. Kornbrath did not guarantee him a specific sentence and that Mr. Kornbrath advised him to take the**

**plea. Additionally, it is clear from the evidence presented at the May 15, 2013 hearing that Petitioner should have known that if he did not accept the guilty plea, he potentially faced more than twenty-five (25) years incarceration.**

Like any other claim of ineffective assistance of counsel, Petitioner must here show actual prejudice, in that the plea process would have been different but for counsel's unprofessional errors. *See Lafler* at 1384. "To establish prejudice in this instance, it is necessary to show a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

It is important to note that several facts are undisputed. First, both Mr. Brown and Mr. Kornbrath testified that Mr. Kornbrath advised Mr. Brown to accept the plea offer. Second, both testified that Mr. Kornbrath did not guarantee the Petitioner a specific sentence

Petitioner's claim that he would have accepted the plea offered by the prosecution had Mr. Kornbrath made him aware of the possibility of receiving more than twenty-five (25) years incarceration is not credible. Documentation submitted and testimony solicited by the Government at the May 15, 2013, evidentiary hearing makes it clear that life in prison, and not twenty-five (25) years, was the potential maximum sentence which could be imposed on Petitioner [Doc.244-4 at 3; Doc. 244-1 at 3]. The transcript of Petitioner's initial hearing, submitted by the Government shows plainly that Magistrate Judge Kaull informed Petitioner that:

> "Each one of those is a serious felony charge, and with respect to the first count - charge, if convicted, and it's proved that was 50 - more than 50 grams of a mixture

containing detectable amounts of methamphetamine, you
face ten years to life in prison."

[Doc. 237, P. 4, Lines 14-19].

Petitioner testified during his hearing on May 15, 2013 before Magistrate Judge

Joel that when he appeared before Judge Kaull for his initial that his mind was not clear

because he was a long time drug user and was coming down off drug use at that

hearing.  However, before and after being apprised of the statutory sentence range by

Magistrate Judge Kaull at the initial, Petitioner confirmed that his mind was clear [Doc.

237 at 2], and that he understood what he had been told [Doc. 237 at 4].

> 23 **THE COURT: Is your mind clear as you sit there**
> 24 **in Elkins?**
> 25 **THE DEFENDANT: Yes, sir.**

[Doc. 237 at 2]

Additionally, Petitioner was apprised of the potential life sentence by Mr. Warner

through tendering the Government's plea offer, as well as by Mr. Kornbrath when he

read the plea agreement to the Petitioner paragraph by paragraph.  (May 15, 2013

hearing.) In Paragraph 5 of the plea offer, it states in writing that the maximum penalty

to which Mr. Brown would be exposed was "imprisonment for a period of at least ten

(10)  years to life, a fine of $4,000,000, or both, and a term of at least eight (8) years of

supervised release." [Doc. 244-1].

This Court finds Mr. Kornbrath's testimony to be more credible with regard to his

explanation of the plea and sentencing guidelines to the Petitioner, as Mr. Kornbrath

kept records of what was discussed at his meetings with Mr. Brown and Mr. Brown

testified that he couldn't recall parts of that meeting.

The weight of the evidence shows that Mr. Brown was several times apprised that his potential maximum sentence was actually a life sentence. Petitioner was, or had ample reason to be, fully aware that he risked a sentence well in excess of 25 years incarceration by going forward to trial, and was thus not prejudiced by Mr. Kornbrath's estimate of 234-294 months (20-25 years), regardless of whether it ultimately turned out to be incorrect.

The Court finds in this instance that Defense counsel was not deficient in performance and their was no prejudice to the Petitioner. Mr. Kornbrath correctly conveyed the applicable law to the Petitioner and did NOT guarantee a specific sentence. Mr. Kornbrath further advised the Petitioner to take the plea. The Petitioner decided based on that correct information to go to trial. Prior to trial, the Petitioner tried to get witnesses to change their testimony in his favor, resulting in an increased sentence for obstruction of justice.

The Petitioner's claim that Defense counsel misinformed him that the maximum he could receive if he went to trial was twenty five years is simply incorrect and that is clear from the testimony at the May 15, 2013 hearing.

The court finds that Petitioner was afforded effective assistance of counsel at the plea bargaining stage. Likewise the court finds that there is not a reasonable probability that Petitioner would have accepted the earlier plea offer even if Defense counsel's prediction of his ultimate sentence had been thirty years instead of twenty-five.

For those reasons, the court finds that this claim does not meet the *Strickland* test of ineffective assistance of counsel and therefore recommends that Petitioners Motion be denied as to this claim.

## V.   RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 2:12-cv-70, ECF No. 1; Criminal Action No. 2:09-cr-14-1, ECF No. 217) be **DENIED** and **DISMISSED** because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: May 30, 2013

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE