**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**JEREMY TODD BROWN,**

>  **Petitioner,**

**v.**                                          **Civil Action No. 2:12-CV-70**
                                              **Criminal Action No. 2:09-CR-14-1**
                                              **(Bailey)**

**UNITED STATES OF AMERICA,**

>  **Respondent.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel [Civ. Doc. 5; Crim. Doc. 245].  Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Joel for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Joel filed his R&R on May 30, 2013 [Civ. Doc. 5; Crim. Doc. 245].  In that filing, the magistrate judge recommended that this Court deny the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Civ. Doc. 1; Crim. Doc. 202; Crim. Doc. 217] and dismiss this case with prejudice because the petitioner "has failed to meet the two prongs of *Strickland*"[1] [Civ. Doc 5 at 9, 27; Crim. Doc. 245 at 9, 27].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

1

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Here, objections to Magistrate Judge Joel's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  Before the deadline for objections, counsel for the petitioner filed a Motion to Enlarge Time for Filing Objections to Report and Recommendation of Magistrate Judge until June 28, 2013 [Crim. Doc. 246] so that a transcript of a proceeding before the magistrate judge could be obtained in preparation for the objections.  On June 6, 2013, this Court granted the motion for an extension of time, providing counsel for the petitioner until June 28, 2013, to file objections on the petitioner's behalf [Crim. Doc. 247].  On June 19, 2013, counsel for the petitioner filed objections to the R&R [Crim. Doc. 250].  Accordingly, this Court will review the portions of the R&R to which objection was made under a *de novo* standard of review.  The remaining portions of the R&R will be reviewed for clear error.

## I. Factual and Procedural History

### A. Conviction and Sentence

On June 16, 2009, the Grand Jury indicted the petitioner on four counts of a twenty-six count Indictment involving two defendants [Crim. Doc. 4].  Count One charged the petitioner and co-defendant Bruce Alan Davidson, Jr. with conspiracy to manufacture

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 [*Id.* at 1].

Count Two charged the petitioner and co-defendant with possession of material used in the

manufacture of methamphetamine, in violation of 21 U.S.C. §§ 843(a)(6), 843(d)(2) and 18

U.S.C. § 2 [*Id.* at 2].  Count Three charged the petitioner and co-defendant with possession

of pseudoephedrine to be used in the manufacture of methamphetamine in violation of 21

U.S.C. § 841(c)(2) and 18 U.S.C. § 2 [Id. at 3].  Count Four charged the petitioner and co-

defendant with possession of material used in the manufacture of methamphetamine, in

violation of 21 U.S.C. §§ 843(a)(6), 843(d)(2) [*Id.* at 4].  On July 21, 2009, the petitioner

was arraigned on those charges and released on an Order Setting Conditions of Release

[Crim. Doc. 36].  On August 4, 2009, the petitioner filed a Motion to Suppress Evidence

[Crim. Doc. 41], which he later withdrew on August 13, 2009, because he was not a

resident of the home that was searched at the time of the search and therefore, he lacked

standing to file that Motion [Crim. Doc. 48].  On August 12, 2009, the Grand Jury returned

a superseding Indictment against the petitioner charging him with four counts of a thirty

count Indictment involving two defendants [Crim. Doc. 45].  In the superseding Indictment,

the petitioner was the sole defendant named in Counts Two, Three, and Four, while in the

original Indictment, his co-defendant had been named in those counts also [*Id.* at 1-4].

On September 23, 2009, after a two day trial, the petitioner was convicted of Counts

One, Two, and Three and found not guilty as to Count Four [Crim. Doc. 114].  At that time,

the Government made an oral motion to revoke the petitioner's bond, which was granted

[Crim. Doc. 118].  The petitioner was represented by Federal Public Defender Brian

Kornbrath during the trial proceedings.

On March 8, 2010, the petitioner appeared before the undersigned for sentencing. The petitioner was sentenced to a term of 360 months imprisonment concurrent with Counts Two and Three, followed by a five-year term of supervised release on Count One; to a term of 120 months concurrent with Counts One and Three, followed by three years of supervised release on Count Two; and to a term of 240 months concurrent with Counts One and Two, followed by a three-year term of supervised release on Count Three [Crim. Doc. 136].

## B. Direct Appeal

The petitioner pursued a direct appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit")  On appeal, the petitioner asserted that (1) a defense witness was called to testify out of order, before the Government finished presenting its case; (2) the district court clearly erred in finding that an obstruction of justice adjustment applied; and (3) the $100 special assessment in each count of conviction was an excessive fine that violated the Eight Amendment and Origination Clause of the Constitution [Crim. Doc. 162 at 2].  The Fourth Circuit affirmed the petitioner's conviction and held that the Court did not commit plain error in determining that the petitioner obstructed justice, and that the Court did not plainly err in imposing the special assessment [Id. at 9].  The petitioner filed a petition for a *writ of certiorari* in the United States Supreme Court, which was denied on October 3, 2011.  ***Brown v. United States***, 132 S.Ct. 339 (2011).

## C. Motion Under 28 U.S.C. § 2255

On October 1, 2012, the petitioner filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civ. Doc. 1; Crim.

4

Doc. 202], which was later refiled on the court-approved form [Crim. Doc. 217] after newly-retained counsel for the petitioner requested and received leave from the Court to file a corrected motion [Crim. Doc. 211; Crim. Doc. 215].  In the petition, the petitioner raises five claims of ineffective assistance of counsel [Crim. Doc. 217 at 5-15].  In support of these claims, the petitioner alleges that his trial counsel was ineffective for the following reasons: (1) failing to file a motion to suppress evidence; (2) failing to object to the verdict form because it did not contain language informing the jury that the drug weights must have been within the foreseeable scope of the conspiratorial agreement; (3) failing to object to the jury instructions because they did not inform the jury that any element of an offense that was found based upon inferences must have been based upon facts established beyond a reasonable doubt; (4) failing to request a jury instruction that the jury must find either a conspiracy to manufacture or a conspiracy to possess with the intent to distribute or a conspiracy for both manufacture and distribution; (5) failing to object to the three level enhancement for substantial risk of harm to human life or the environment; (6) failing to object to the drug quantity on the verdict form because the amount consumed by the petitioner should not have been included in the drug quantity; (7) failing to raise the "rule against nationwide disparity under 3553(a)(6)"; and (8) informing the petitioner that he would receive a maximum possible sentence of twenty-five years [*Id.*].

After conducting an evidentiary hearing on May 15, 2013, the magistrate judge entered his R&R on May 30, 2013 [Civ. Doc. 5; Crim. Doc. 245].  In the R&R, the magistrate judge recommended that this Court deny the petitioner's § 2255 petition for failure to establish a claim of ineffective assistance of counsel with regard to his trial

attorney's performance [*Id.* at 9, 27].  On June 19, 2013, counsel for the petitioner filed objections to the R&R [Crim. Doc. 250].

## II. <u>Applicable Law</u>

"The benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  ***Strickland v. Washington***, 466 U.S. 668, 686 (1984).  The defendant must show that (1) the attorney's performance was deficient and (2) the deficient performance prejudiced the defendant [***Id.*** at 687].   For the first prong of the test, a "defendant must show that counsel's representation fell below an objective standard of reasonableness."  ***Id.*** at 687-88.  For the second prong of the test, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ***Id.*** at 694.  If a defendant cannot satisfy the prejudice prong of the ineffective assistance of counsel test, a court does not need to address the performance prong. ***Fields v. Attorney General of State of Md.***, 956 F.2d 1290 (4th Cir. 1992).

## III. <u>Discussion</u>

The magistrate judge recommended that this Court deny and dismiss the petitioner's Motion Under 28 U.S.C. § 2255 [Crim. Doc. 217; Civ. Doc. 1] because the petitioner failed to meet the two prongs of ***Strickland*** necessary to demonstrate any claim of ineffective assistance of counsel [Crim. Doc. 245; Civ. Doc. 5].  The petitioner raised seven objections to the R&R [Crim. Doc. 250].  Each will be responded to in the order it was raised, with the exception of the second objection that will be responded to last as it objects to the

magistrate judge's conclusions in general.

### A. Quantities of Controlled Substances

The petitioner objects to the magistrate judge's conclusion that his trial attorney could not have anticipated that the jury would find higher drug quantities that would raise the sentencing guidelines an additional two levels [Crim. Doc. 250 at 1-2]. In particular, the petitioner argues that the facts used to determine the drug quantity were not contained in the Indictment and found by a jury, but were the product of an estimate made by the probation officer [*Id.* at 2]. However, a probation officer's estimation is part of the proper procedure for calculating the likes of drug quantities for the sentencing purposes. Fed. R. Crim. P. 32(c) requires the probation officer to "conduct a presentence investigation and submit a report to the court before it imposes sentence," which includes reviewing the trial proceedings and interviewing the defendant. This is also reflected in the United States Sentencing Commission Guidelines Manual § 6A1.1. Rule 32 further describes what the presentence report must contain, including calculation of "the defendant's offense level and criminal history category" and "any factor relevant to the appropriate kind of sentence or the appropriate sentence within the applicable sentencing range." Fed. R. Crim. P. 32(d)(1)(C), (D). Moreover, Rule 32 gives the parties fourteen (14) days after receiving the presentence report to object to it. Fed. R. Crim. P. 32(f). The lack of objections–other than that which was overruled by the undersigned at sentencing–to the presentence report on behalf of the petitioner suggests his acceptance of the content of the report. As such, the magistrate judge's reliance on the independent analysis by the probation officer was not erroneous.

7

Furthermore, the case cited by the petitioner in the objection as support for his contention that reliance on the probation officer's analysis was done in error is distinguishable from this case.  In *Alleyne*, the Court held that any fact that increases the mandatory minimum sentence is an "element" that must be submitted to the jury.  *Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013).  Here, unlike in *Alleyne*, there are no concluded-upon facts or elements of a crime that the jury did not find beyond a reasonable doubt.  In fact, the higher drug quantities that ultimately led to the two level increase in the sentencing guidelines were recommended by the probation officer.  The heightened drug quantity did not change the crime or the mandatory minimum; it merely led to an increase in the guideline level that could have been mitigated by the likes of a lack of an obstruction of justice adjustment.  The petitioner's assertion that the Base Offense Level would have been 26 if the "verdict form was correct" is unsubstantiated.  Accordingly, this Court hereby **OVERRULES** the petitioner's objection on this issue.

### B.  Objections to Standards Applied to Claims of Ineffective Assistance of Counsel Claims

The petitioner objects to the standards used to evaluate a claim of ineffective assistance of counsel and provides those standards that he argues are appropriate.

### 1.  At Trial

The petitioner cites a variation of the *Strickland* two-part test that is only slightly different from that which was described by the magistrate judge in the R&R as the appropriate test for evaluating a claim of ineffective assistance based on inadequate legal assistance [Crim. Doc. 250 at 5].  He claims that this two-part test includes a showing that (1) the defense attorney made an error or errors and (2) the error(s) prejudiced some

8

aspect of the case [*Id.*].  He then describes some of the nuances articulated in **Strickland**, among other cases [*Id.*].

**Strickland** defines its two-part test as necessitating a showing that (1) counsel's performance was deficient and involved errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment and (2) the deficient performance prejudiced the defense in that the errors were so serious as to deprive the defendant of a fair trial with a reliable result.  **Strickland**, 466 U.S. at 687.  This is the test laid out by the magistrate judge in his R&R [Crim. Doc. 245 at 10].  Additionally, both the magistrate judge's and the petitioner's articulation of the ineffective assistance claim test's details are appropriate.[2]

### 2. During Plea Negotiations

The petitioner additionally attempts to lay out the "appropriate test" for ineffective assistance at the plea bargaining stage.  The material discussed in this section is agreeable; however, it does not describe a standard of review.  The petitioner merely asserts the importance of effective assistance of counsel during plea negotiations.  The **Strickland** two-part test is appropriate for determining ineffective assistance of counsel at the plea bargaining stage as well.  **Johnson v. United States**, 860 F.Supp.2d 663, 779 (N.D. Iowa 2012) (citing **United States v. Regenos**, 405 F.3d 691, 693 (8th Cir. 2005)).

_____

[2]*See generally*, **Strickland v. Washington**, 466 U.S. 668 (1984), **Fields v. Att'y Gen. of Md.**, 956 F.2d 1290 (4th Cir. 1992), **Hunt v. Lee**, 291 F.3d 284 (4th Cir. 2002), **Sexton v. French**, 163 F.3d 874 (4th Cir. 1998), **Harrington v. Richter**, 131 S.Ct. 770 (2011), **Richardson v. Branker**, 668 F.3d 128 (4th Cir. 2012), **Gray v. Branker**, 529 F.3d 220 (4th Cir. 2008).

### 3. At Sentencing

This Court does not disagree that criminal defendants have "the right to effective assistance at sentencing" as asserted by the petitioner [Crim. Doc. 250 at 8]. However, like the petitioner's assertions pertaining to effective assistance during plea negotiations, this is not a standard of review.

The *Strickland* standard of review as delineated by the magistrate judge in his R&R is the appropriate standard of review for ineffective assistance claims. Accordingly, the petitioner's objection on this issue is hereby **OVERRULED**.

### C. Failure to File Motion to Suppress

The petitioner argues that trial counsel was ineffective for "withdrawing or failing to litigate the motion to suppress evidence seized . . . pursuant to a search warrant" [Crim. Doc. 250 at 8]. He states that trial counsel's reasoning is incorrect because the law says that the petitioner had the right to use and did use the searched property and thus had standing to contest the search [*Id.*]. *See **United States v. Gray***, 491 F.3d 138, 144 (4th Cir. 2007). The petitioner also claims that the motion to suppress would have successfully restrained the physical evidence because the warrant was "bare bones" and not executed in good faith [Crim. Doc. 250 at 10-11].

In putting the petitioner's objection to the *Strickland* two-part test, this Court finds that the prejudice prong is not satisfied. The withdrawal of the motion to suppress did not have an effect on the outcome of the proceeding. There has been no showing of a reasonable probability that, but for the withdrawal of the motion to suppress, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Even if the motion to suppress had not been withdrawn, it is likely that it would have been unsuccessful. Failure to raise a losing argument or pursue a futile motion to suppress does not constitute ineffective assistance of counsel. *Floyd v. United States*, 2008 WL 3925841 (D.S.C. August 26, 2008). A search warrant is not to be issued based on a "bare bones" affidavit, or one containing wholly conclusory statements lacking the facts and circumstances from which a magistrate judge could independently determine probable cause. *United States v. Doyle*, 650 F.3d 460, 470 (4th Cir. 2011); *see also United States v. Laury*, 985 F.2d 1293, 1311 n. 23 (5th Cir. 1993). Probable cause "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a given location. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). If the affidavit is insufficient to establish probable cause, the *Leon* good faith exception[3] may apply. *Doyle*, 650 F.3d at 470. However, suppression still is an appropriate remedy if the warrant-issuing judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923.

Here, the petitioner has not demonstrated that suppression of evidence obtained pursuant to the search warrant would have been appropriate if the motion had not been withdrawn. The petitioner claims that the search warrant was "bare bones" and insufficient to support probable cause [Crim. Doc. 250 at 11]. However, the search warrant appears

---

[3]The good faith exception allows evidence collected in violation of privacy rights (as interpreted by the Fourth Amendment) to be admitted at trial if the officer acting in good faith relied upon a defective search warrant. *United States v. Leon*, 468 U.S. 897 (1984).

to have been issued based on information given by Deputy Mike Coffman that was sufficient to establish probable cause.  Coffman saw the vehicle that was involved in the traffic stop leave the petitioner's driveway just before the stop, observed a strong chemical odor that seemed to be the same as that in "prior clandestine labs," was told that the third subject in the car with a backpack had been at the petitioner's residence, observed that same strong chemical odor on the third subject who had come from the petitioner's residence, and located packs of Sudafed and containers of clear liquid in the car, both of which are used in the making of methamphetamine [Crim. Doc. 40-1].  This description does not contain merely conclusory statements and is sufficient to establish an independent determination of probable cause; therefore, there is no need to consider the ***Leon*** exception.  Further, the petitioner has in no way demonstrated that this information given by the officer may have been false or given falsely and misled the warrant-issuing judge.  Thus, suppression of the physical evidence obtained from this warrant would not have been appropriate.  Additionally, even assuming there was not a substantial basis for finding probable cause, application of the ***Leon*** exception would have been probable.  Consequently, the prejudice prong of the ***Strickland*** test is not satisfied because there is not a reasonable probability of a different outcome had the motion to suppress not been withdrawn.  Accordingly, the petitioner's objection on this issue is hereby **OVERRULED**.

### D.  Failure to Object to the "Defective" Verdict Form

The petitioner objects to the magistrate judge's conclusion that the failure to object to the verdict form was not ineffective assistance of counsel [Crim. Doc. 250 at 11].  He

asserts that the jury verdict form was erroneous because (1) the jury was essentially given a directed verdict for the Government on the issue of drug quantity, (2) the jury was not instructed to make the drug quantity determination with individualized consideration, and (3) the jury was not told to subtract those quantities of methamphetamine that were not usable or consumable [Crim. Doc. 250 at 13].

This Court notes that the petitioner, in his objections, misquotes the verdict form, which may be found in the record as Document 114.  This Court finds no defect in the verdict form.  While the petitioner claims that the jury was not instructed to make an individualized consideration of the drug quantity, the jury was instructed that:

> If you find the defendant guilty of the crime charged in Count 1 of the Indictment (conspiracy), then you must also determine the amount of controlled substance involved that should be attributed to the defendant.  A defendant is only responsible for drug activity by other conspirators that was both within the scope of his agreement (i.e., part of his jointly undertaken activity) and reasonably foreseeable to him.

[Doc. 112, p. 23].

In addition, the petitioner alleges that the jury should have been told to subtract those quantities of methamphetamine that were not usable or consumable, citing several cases.  In *United States v. Jennings*, 945 F.2d 129, 136-137 (6th Cir. 1991), the Sixth Circuit found that, at sentencing, the court should not have included a portion of a crockpot cook that was poisonous in determining relevant conduct.  In *United States v. Turner*, 59 F.3d 481 (4th Cir. 1995), the Fourth Circuit dealt with the proper interpretation of Guideline

13

Amendment 488 in LSD cases.  In *United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998), the Ninth Circuit dealt with Guideline Amendment 484.  Finally, in *United States v. Stewart*, 361 F.3d 373 (7th Cir. 2004), the Seventh Circuit dealt with a thwarted, incomplete attempt at producing methamphetamine.

In this case, the jury was primarily considering historical testimony of amounts of methamphetamine that were actually distributed.  Accordingly, there was no need and no basis from which the jury could subtract unusable methamphetamine.

The petitioner's assertions fail to satisfy the *Strickland* two-part test.  While the petitioner notes his burden of demonstrating a reasonable probability that the defect in the verdict form affected the verdict, he has not actually done so other than to state the unsupported conclusion that it did [Crim. Doc. 250 at 14].  He mentions that he "does not have to show that the jury was actually influenced by the error," but he does have to show that the outcome of the case probably would have been different, and that requires some sort of showing that the error somehow influenced the jury.  To satisfy the prejudice prong of *Strickland*, he must demonstrate a reasonable probability that counsel's error had an affect on the outcome of the case sufficiently serious that it warrants setting aside the outcome of the proceeding, and that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  To simply assert the conclusion that the jury was affected without attempting to demonstrate how the jury was negatively affected is not sufficient to satisfy this test.  As such, the petitioner's objection on this issue is hereby **OVERRULED**.

### E.  Quantity of Drugs Found by Jury

The petitioner restates his objection to the magistrate judge's conclusion that failing to inform the jury to subtract the quantity of drugs that were intended for personal use or were not usable was not ineffective assistance of counsel [Crim. Doc. 250 at 14].  He asserts that this case is distinguishable from other drug cases because it involved the conversion of a legal drug into an illegal drug [Crim. Doc. 250 at 15].  He cites *Bell*[4] as an analogous case.  This case is not analogous to *Bell*.  *Bell* did not deal with the conversion of a legal drug into an illegal drug; it concerned the illegal distribution of a legally obtained drug.  That is in no way what occurred in this case.  If the petitioner had possessed pseudophedrine with the intent to distribute pseudophedrine, then this case would be similar, as the petitioner claims it is.  But this case deals with using the pseudophedrine to manufacture an illegal drug.  This Court agrees with the petitioner that possession of Sudafed is not illegal; however, using Sudafed to make methamphetamine intended for any use–personal or otherwise–is illegal.  21 U.S.C. § 841(a).  The petitioner has in no way attempted to address with statute, case law, fact, etc. the magistrate judge's assertion that the crime of manufacturing a controlled substance (which includes methamphetamine) is not mitigated if the substance is manufactured for personal use.  Nor has the petitioner even suggested an alleged amount of his personal use which could be quantified.  Accordingly, the petitioner's objection on this issue is hereby **OVERRULED**.

---

[4]*United States v. Bell*, 667 F.3d 431 (4th Cir. 2012).

## F. Failure to Object to Application of the Sentencing Guidelines

The petitioner objects to sentencing counsel's failure to object to the district court's application of the sentencing guidelines for several reasons.

### 1. Pseudophedrine Consumed Not Subtracted From Total Quantity

The petitioner states that his counsel did not object to the drug quantity established at sentencing, which was based on a conversion and "did not subtract the pseudophedrine consumed from the total quantity delivered" [Crim. Doc. 250 at 15].  This statement is not accompanied by any type of analysis, reasoning, or conclusion.  Moreover, it is factually inaccurate.  This Court directs the petitioner to Defendant's Objection No. 2 contained on page 36 of the Presentence Report [Doc. 137], wherein defense counsel argued that "the drug quantity based Federal Sentencing Guidelines are too high in that they fail to account for the fact that the on-going methamphetamine manufacturing process took place because of the defendant's serious addiction.  Those involved in the misconduct were a confederacy of drug addicts who worked together only to make enough methamphetamine to consume."  Again at the sentencing hearing, defense counsel reiterated his request for a variant sentence based on the amount of the meth that the petitioner was consuming on a daily basis.  This Court, not impressed by the argument, stated in its Statement of Reasons [Doc. 137] that "methamphetamine has ruined many lives in Upshur County and the defendant and his confederacy played a substantial role in that."

Furthermore, there was no factual basis by which this Court could make such a determination inasmuch as there was no testimony concerning the amount of pseudoephedrine used by the petitioner.

16

2. <u>Three-Level Increase Erroneously Applied for Substantial Risk of Harm</u>

The petitioner contends that counsel should have objected to the three-level increase that was applied for creating a substantial risk of harm to human life and the environment because expert testimony indicated that any risk created was no greater than the ordinary risk created by any meth lab in Upshur County, West Virginia [Crim. Doc. 250 at 15]. He asserts that the enhancement was based on inaccurate speculation on behalf of the probation officer who prepared the presentence report [Crim. Doc. 250 at 16-21]. The petitioner gives examples of other cases that he claims support his position [Crim. Doc. 250 at 17-21]. He also notes the four factors required for an enhancement that prohibit the Court from basing an enhancement on generalizations, which he contends the probation officer and Court did [Crim. Doc. 250 at 18].

The petitioner's assertions fail for a variety of reasons. First, as previously noted, it is procedure for the probation officer to prepare a presentence report, which is based on his extensive research and investigation into the facts of the case. Most importantly, the presentence report here is greatly based on information that was produced during testimony at trial. That trial was presided over by the undersigned, who also was the sentencing judge. The undersigned also reviewed and accepted the presentence report, even after hearing objections from counsel [Crim. Doc. 149]. To suggest that the probation officer's findings are mere speculation is clearly inaccurate.

Second, the petitioner mentions that the items found in the house were not inherently dangerous. The petitioner fails to mention the anhydrous ammonia that was located at the property [Crim. Doc. 137-1 at 16] and utilized in the manufacture of the

methamphetamine [Crim. Doc. 137-1 at 15].  Anhydrous ammonia is a toxic chemical to begin with[5], and its use in the methamphetamine manufacture made the manufacture not at all "typical;" rather it is one of the most hazardous methods of producing methamphetamine.[6]  Testimony at trial revealed that, in order to obtain a greater return percentage of methamphetamine, the petitioner engaged in a smoking off process that produces a hydrochloric acid gas that creates a harm to human life [*Id.*].  Additionally, the ventilation system was used to remove the hazardous chemicals and fumes from the property itself at the expense of the surrounding environment, and, according to testimony, trash and liquid bi-products were burned outside the petitioner's residence, releasing the dangerous fumes and endangering the numerous individuals who frequented the petitioner's property [*Id.*].  It cannot be said that no substantial risk to human life was created.

Finally, the petitioner notes the four factors to be assessed in determining whether an offense created a substantial risk of harm to human life or the environment.  However, he seems to overlook the substance of the Extent Factor.  The Extent Factor "compels a sentencing court to consider 'the duration of the offense, and the extent of the manufacturing operation.'"  ***United States v. Houchins***, 364 F.3d 182, 189 (4th Cir. 2004).  In ***Houchins***, the Fourth Circuit upheld the enhancement based on an operation two-weeks

---

[5]*AMMONIA SOLUTION (UN 3318); AMMONIA, ANHYDROUS (UN 1005): Lung Damaging Agent*, Center for Disease Control and Prevention, *at* http://www.cdc.gov/niosh/ershdb/EmergencyResponseCard_29750013.html (June 18, 2013).

[6]*See* ***United States v. Houchins***, 364 F.3d 182 (4th Cir. 2004).

in duration.  Here, the operation had a duration of two *years*.  The petitioner's reliance on these factors is misguided.

3. <u>Sentence Unreasonable Because Inconsistent With 18 U.S.C. § 3553(a)(6)</u>

The petitioner claims that counsel was ineffective for failing to argue that the sentence was inconsistent with 18 U.S.C. § 3553(a)(6), which provides protection against nationwide disparities in sentences among similar defendants [Crim. Doc. 250 at 21].  He notes that the district court has an obligation to address sentencing disparities and consider unwarranted sentencing disparities [*Id.*].  However, this was not necessary as the undersigned did consider 18 U.S.C. § 3553(a)(6) without the urging of counsel.  The following statement was made at sentencing:

> THE COURT: In determining the appropriate sentence to be imposed, this Court has considered all the factors set forth in 18 U.S.C. § 3553(a).  Given the circumstances of this case, this Court finds no grounds upon which to reduce or increase the sentence beyond the lowest level of the applicable guidelines as determined.

[Crim. Doc. 149 at 14].

It is evident that there was no need for counsel to raise such an argument as the Court had already taken these factors into consideration.

4. ***Shepard* <u>Documents Should Have Been Produced</u>**

The petitioner asserts that it was impossible to properly compute his criminal history category because counsel failed to insist on production of the ***Shepard***[7] documents [Crim. Doc. 250 at 22].  He claims that the presentence report's criminal history computation was not based on the official documents approved in that case [*Id.*]. However, ***Shepard*** does

---

[7]***Shepard v. United States***, 544 U.S. 13 (2005).

19

not require production of certain documents in order to accurately compute a criminal history category; it limits those that can be considered by a sentencing court.[8]   The computations used in deriving the petitioner's criminal history category were done consistently with the United States Sentencing Commission's guidelines.  Additionally, the petitioner has shown no evidence that any documents that would not be approved by *Shepard* were used in the computation of his criminal history category, nor how insisting on the use of *Shepard* documents would have affected his criminal history category.  He simply asserted that the criminal history level probably would have been lower.

For all of these reasons, the petitioner's objection on this issue is **OVERRULED**.

### G. R&R Conclusions and Recommendations on Page 9

The petitioner objects to the conclusion reached by the magistrate judge in his R&R. Specifically, the petitioner objects to the magistrate judge's recommendation that this Court deny the petitioner's motion [Crim. Doc. 250 at 2].  For the reasons elaborated in this Order, the petitioner's objection on this issue is **OVERRULED**.

### IV.  Conclusion

Upon careful review of the report and recommendation, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Civ. Doc. 5; Crim. Doc. 245]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report.  Further, the petitioner's Objections **[Crim. Doc. 250]** are **OVERRULED**.  Accordingly, the petitioner's Motion to Vacate, Set Aside, or Correct

---

[8]*Shepard*, 544 U.S. at 26.

Sentence pursuant to 28 U.S.C. § 2255 **[Civ. Doc. 1; Crim. Doc. 202; Crim. Doc. 217]** is

**DENIED**.  As such, this case is hereby **DISMISSED WITH PREJUDICE** and **ORDERED**

**STRICKEN** from the active docket of this Court.  The Clerk is **DIRECTED** to enter a

separate judgment in favor of the respondent.

 As a final matter, upon an independent review of the record, this Court hereby

**DENIES** the petitioner a certificate of appealability, finding that he has failed to make "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

 It is so **ORDERED**.

 The Clerk is directed to transmit copies of this Order to all counsel of record herein.

 **DATED:** August 14, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE